# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION

| | |
|---|---|
| KEITH LAMONT FARMER ) | |
| ) | |
| Plaintiff, ) | JURY DEMAND |
| ) | |
| v. ) | Case No. 3:12-cv-00489 |
| ) | |
| CPL. CHRIS PARKER, ) | JUDGE ALETA A. TRAUGER |
| SHERIFF DARON HALL, D.C.S.O., & ) | |
| METRO GOVERNMENT, ) | MAGISTRATE JUDGE JOE B. |
| ) | BROWN |
| Defendants. ) | |

## CASE MANAGEMENT ORDER

A.  JURISDICTION: The court has jurisdiction pursuant to 28 U.S.C. § 1331 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*.

B.  BRIEF THEORIES OF THE PARTIES: [not to be a verbatim recitation of the pleadings]

1)  PLAINTIFF:

At the time of the incident alleged in the lawsuit, Plaintiff Keith Lamont Farmer was a pre-trial detainee in the custody of the Davidson County Sheriff's Office. On January 22, 2012, while in custody, Keith Farmer was maced, punched, and thrown into a wall by Defendant Chris Parker, and driven to the ground by Parker and Sergeant Lionel Farley, who both continued to assault him as he was restrained and on the ground and suffering a seizure.

Farmer posed no threat to Parker at the time and had made no aggressive actions towards him or towards any other officer. He had stated directly before the incident to Parker that he believed that the legal mail he was carrying on his person at the time could only be inspected in the presence of a Sergeant, and had requested one to be present before allowing Parker to view that mail. As a result of this assault, Farmer suffered a serious and long-lasting back injury. Defendant's harassment of Farmer continued later in the day. When Farmer was restrained in a restraint chair and was unable to move,

1

Defendant threatened the safety of Farmer's brother and harassed and intimidated him verbally.

2) DEFENDANT:

On January 22, 2012, Corporal Chris Parker was employed with the Davidson County Sheriff's Office (hereinafter referred to as "DCSO") as a detention officer for the Davidson County Criminal Justice Center (hereinafter referred to as "CJC"). On that date, Plaintiff Keith Farmer was a pre-trial detainee in the special management housing unit (hereinafter referred to as "SMU") of the CJC. That unit is used to house inmates whose continued presence in the general population would pose a threat to life or property or as a punitive form of segregation as a result of a disciplinary violation. Therefore, Cpl. Parker was required to be particularly vigilant regarding potential security risks posed by inmates housed in the SMU.

On the morning of the incident, Cpl. Parker was in the recreation area on the roof of the CJC preparing to escort inmates back to their cells in the SMU unit when he noticed that Mr. Farmer possessed a large, yellow envelope. Although this was a clear violation of housing rules, Cpl. Parker elected not to confront Mr. Farmer at that time because Cpl. Parker was greatly outnumbered by potentially dangerous inmates. After Cpl. Parker escorted Mr. Farmer and several other inmates from the recreation area back to a holding cell in the SMU, he began to escort Mr. Farmer towards his cell located on the right side of the unit. At that time, Cpl. Parker directed Mr. Farmer to give him the envelope with the intent of searching it for contraband and/or weapons pursuant to DCSO standard operating procedure. Mr. Farmer reacted by verbally protesting, clutching the envelope closer to his body, and forcing his way past Cpl. Parker towards the left side of the unit. At that time, Sgt. Lionel Farley was in a potentially vulnerable position on the left side of the unit because he was down on one knee attempting to remove handcuffs from an inmate that he had just escorted back to a cell. Cpl. Parker perceived an immediate need to control Mr. Farmer's actions and ensure that the envelope with unknown contents did not contain a weapon or other contraband such as drugs and to prevent Mr.

2

Farmer from passing the contents of the envelope to another inmate. Therefore, Cpl. Parker pursued Mr. Farmer and pushed him against a wall in an attempt to gain control of his person and isolate the potential threat from the unknown contents of the envelope and Mr. Farmer's erratic behavior. After Mr. Farmer continued to resist, Cpl. Parker first threatened and then used a DCSO-approved chemical agent in an attempt to gain compliance. Mr. Farmer continued to resist by running from Cpl. Parker and in the direction of Sgt. Farley. As Cpl. Parker pursued Mr. Farmer, Sgt. Farley met Mr. Farmer on the left side of the unit and performed a front leg sweep maneuver which caused Mr. Farmer to fall to the floor. After he fell, Mr. Farmer struggled with Cpl. Parker and Sgt. Farley. While Sgt. Farley attempted to gain control of Mr. Farmer's upper body, Cpl. Parker attempted to control the lower part of Mr. Farmer's body by placing his knee on Mr. Farmer's buttocks and grabbing his legs with his hands. When several inmates in the holding area of the SMU acted as if they were going to try to intervene in the struggle, another officer in the unit called a "code red" which summoned assistance from additional officers to deal with the security threat. Shortly thereafter, several of the additional officers took custody of Mr. Farmer and escorted him to another area of the unit for a medical assessment before placing him back in his cell.

    Cpl. Parker used only the amount of force necessary to gain control of Mr. Farmer in order to preserve the security of the SMU unit. Any injuries suffered by Mr. Farmer during that use of force were unavoidable and, regardless, were actually caused by the reasonable use of force by Sgt. Farley when he took Mr. Farmer to the ground. Although Cpl. Parker later made a comment to Mr. Farmer that was interpreted as a threat against Mr. Farmer's brother, this comment did not rise to the level of a constitutional violation and, regardless, did not result in any damages to Mr. Farmer.

    C.    ISSUES RESOLVED: Jurisdiction and venue.

    D.    ISSUES STILL IN DISPUTE: Liability and damages.

    E.    DISCOVERY: The parties shall complete all written discovery and depose all fact

witnesses on or before August 30, 2013. Discovery is not stayed during dispositive motions, unless ordered by the court. Local Rule 33.01(b) is expanded to allow 40 interrogatories, including subparts. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

    F.    DISCLOSURE OF EXPERTS: The plaintiff shall identify and disclose all expert witnesses and expert reports on or before August 1, 2013. The defendant shall identify and disclose all expert witnesses and reports on or before August 30, 2013.

    G.    DEPOSITIONS OF EXPERT WITNESSES: The parties shall depose all expert witnesses on or before October 1, 2013.

    H.    JOINT MEDIATION REPORT: The parties shall file a joint mediation report on or before September 5, 2013.

    I.    DISPOSITIVE MOTIONS: The parties shall file all dispositive motions on or before November 15, 2013. Responses to dispositive motions shall be filed within twenty (20) days after the filing of the motion. Optional replies may be filed within ten (10) days after the filing of the response. Briefs shall not exceed 20 pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the court.

    J.    ESTIMATED TRIAL TIME: The parties expect the trial to last approximately 3 days.

It is so **ORDERED.**

_____
ALETA A. TRAUGER
U.S. District Judge

APPROVED FOR ENTRY:

 /s/ Aaron Monick
Attorney for Plaintiff

 /s/ Sean W. Lyons
Attorney for Plaintiff

 /s/ D. Randall Mantooth
Attorney for Defendant